IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHANIEL MYERS,

      Plaintiff,               CV F 04 5166 OWW WMW P

      vs.                      FINDINGS AND RECOMMENDATION RE MOTION FOR SUMMARY JUDGMENT (DOC 51)

DR. AUGUSTO LOAIZA, et al.,

      Defendants.

      Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant Loaiza's motion for summary judgment. Plaintiff has opposed the motion.

      Plaintiff, an inmate in the custody of the California Department of Corrections at the California Substance Abuse Treatment Facility at Corcoran (SATF), brings this civil rights action against defendant correctional officials employed by the Department of Corrections at SATF. Plaintiff claims that defendants subjected him to constitutionally inadequate medical care. Plaintiff names the following individual

defendants: Doctor Loaiza; Medical Technical Assistant (MTA) Dulay; MTA Moore.

Plaintiff's allegations stem from a medical transfer to Corcoran in October of 2002 from Salinas Valley State Prison. While at SVSP, Plaintiff was in the Correctional Treatment Center (CTC). Plaintiff had undergone surgery, and needed periodic dressing changes. Plaintiff alleges that he underwent surgery for decubitus. The Registered Nurse that saw Plaintiff upon his arrival refused to send him to the CTC. On the day of his arrival at SATF, Plaintiff was seen by MTA Dulay. Dulay refused to see Plaintiff, and told him to see MTA Moore, "as she does doctor's line."[1]

On November 4, 2002, Plaintiff had an appointment with Dr. Loaiza. Plaintiff alleges that Dr. Loaiza never saw his wound. Dr. Loaiza told plaintiff he would authorize egg crates for plaintiff to sleep on, but he failed to do so.

On November 13, 2002, Plaintiff asked MTA Dulay to change his dressing for him, as his hand was in a cast. MTA Dulay refused. On November 27, 2002, Plaintiff alleges that he "had no other choice but to go man-down" to get medical attention. Correctional staff summoned MTA Dulay and MTA Moore, both of whom refused to help Plaintiff get on the examination table (another inmate helped plaintiff on to the table). Both of them asked Plaintiff why Dr. Loaiza had not put Plaintiff in the hospital. They then contacted the on-call physician. Plaintiff alleges that he had three more surgeries, and contacted a contagious blood disorder

---

[1] Decubitus is a bedsore. A decubitus ulcer results from pressure to an area of the body from a bed or chair. Taber's Cyclopedic Medical Dictionary, 14th Ed.

due to their neglect.

**SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be

granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon its allegations, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to

1  **require a jury or judge to resolve the parties' differing versions of the**
2  **truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at**
3  **631. Thus, the "purpose of summary judgment is to 'pierce the pleadings**
4  **and to assess the proof in order to see whether there is a genuine need for**
5  **trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory**
6  **committee's note on 1963 amendments); International Union of Bricklayers**
7  **v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).**

8  **In resolving the summary judgment motion, the court examines the**
9  **pleadings, depositions, answers to interrogatories, and admissions on file,**
10 **together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC**
11 **v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of**
12 **the opposing party is to be believed, Anderson, 477 U.S. at 255, and all**
13 **reasonable inferences that may be drawn from the facts placed before the**
14 **court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at**
15 **587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per**
16 **curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir.**
17 **1979). Nevertheless, inferences are not drawn out of the air, and it is the**
18 **opposing party's obligation to produce a factual predicate from which the**
19 **inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp.**
20 **1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).**

21 **Finally, to demonstrate a genuine issue, the opposing party "must do**
22 **more than simply show that there is some metaphysical doubt as to the**
23 **material facts.... Where the record taken as a whole could not lead a**
24 **rational trier of fact to find for the nonmoving party, there is no 'genuine**
25 **issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).**

26

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u>

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980), <u>citing</u> <u>Estelle</u>, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle v. Gamble</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1050 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u>

1  grounds, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997)(en
2  banc).  Even gross negligence is insufficient to establish deliberate
3  indifference to serious medical needs.  See <u>Wood v. Housewright</u>, 900 F.2d
4  1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis
5  or treatment does not support a claim of deliberate indifference.  <u>Sanchez
6  v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

7  In order to meet his burden on summary judgment, Dr. Loaiza must
8  come forward with evidence that establishes the lack of a triable issue of
9  fact - evidence that he was not deliberately indifferent to a serious medical
10 need of Plaintiff's.  Dr. Loaiza supports his motion with the declarations
11 of Alan M. Sockolov, M.D., and the deposition of Plaintiff.  The motion is
12 also supported by a copy of Interrogatories, Set One, propounded to
13 Plaintiff on or about May 9, 2006.

14 Plaintiff's claims vary from Dr. Loaiza's failure to admit Plaintiff to
15 the CTC, and Dr. Loaiza's failure to authorize egg crates or to "see his
16 wound."  However, all of the claims stem fro Dr. Loaiza's treatment of
17 Plaintiff on November 4, 2002.

18 Dr. Loaiza, referring to Plaintiff's medical record and the date at
19 issue, declares as follows.

> The medical records indicate that on November 4,
> 2002, Mr. Myers was a prisoner at the Corcoran
> facility and was seen by me in the Correctional
> Treatment Center at the facility.  The medical
> records show that I obtained a history from Mr.
> Myers of being a paraplegic and having a prior
> seizure, which included a fall on his left arm, two
> months prior.  Mr. Myers' history also include
> having a supra pubic catheter for incontinence and
> a colostomy.  The patient, Mr. Myers, was confined
> to a wheelchair.  Plaintiffs complaints on
> November 4, 2002 were of muscle spasms and pain

7

> on the right side of his body.  It is further noted in plaintiff's chart that he had decubitus ulcers.
>
> Mr. Myers' record shows that I prescribed medication, including Neurontin, Dilantin, Flexeril and a cream for his feet.  In addition, I prescribed daily dressing changes for his decubitus ulcers.
>
> The chart of plaintiff's treatment of November 4, 2002 does not indicate that plaintiff was suffering from any condition that required emergency care or admission to an infirmary or hospital setting, including the Correctional Treatment Center (CTC).  It is clear from the medical records that I took a history of Mr. Myers' pre-existing conditions and current complaints, I evaluated his conditions and made orders that were appropriate, including daily dressing changes to his decubitus ulcers.  The medical records do not indicate that, at any time, I refused treatment to Mr. Myers.  At no time did I refuse to provide Mr. Myers with care or treatment.  At no time did I intentionally or knowingly cause Mr. Myers any pain, suffering, injury or harm.  In my professional opinion, based upon my review of Mr. Myers' medical records, as well as my own observations, Mr. Myers received all reasonable and necessary care for his conditions consistent with community standards.
>
> There is nothing in the records to indicate that it was ever brought to my attention that Mr. Myers' decubitus ulcer condition was allegedly worsening and I have no recollection of ever being informed of such.  According to the chart of Mr. Myers, he was admitted to the CTC on November 27, 2002.

Loaiza Decl., ¶¶ 6-8.

Defendant also submits the declaration of Alvin M. Sockolov, M.D. in support of his motion.[2]  Dr. Sockolov has reviewed the pertinent portions

---

[2] Dr. Sockolov completed his medical school education at University of California, Los Angeles and Internship and Residency at University of California, Davis.  He has been a physician in private practice in Sacramento, California since 1983.  He is presently on the active staff for the Family Practice Department of both Sutter Community Hospital and Mercy General Hospital.  He also has an active affiliation with the University of California, Davis School of Medicine.

of Plaintiff's medical record as well as the amended complaint on which this action proceeds.

Dr. Sockolov declares as follows.

> On November 24, 2002, plaintiff presented with the history of being paraplegic and having a prior seizure, which included a fall on his left arm two months prior. His history also included having a supra pubic catheter for incontinence and colostomy. Plaintiff was confined to a wheelchair. Plaintiff's complaints on November 4, 2002 were of muscle spasms and pain on the right side of his body. It is further noted that plaintiff had decubitus ulcers.
>
> The plan for the patient on November 4, 2002 was to prescribe medication, including Neurontin, Dilantin, Flexeril and cream for his feet. In addition, daily dressing changes were prescribed for decubitus ulcers.
>
> It appears from the notations made in Mr. Myers' medical chart that on November 4, 2002, Dr. Augusto Loaiza saw the patient and made an appropriate decision on the level of care necessary regarding all of plaintiff's complaints, including the ordering of daily dressing changes with respect to Mr. Myers' decubitus ulcer condition, which is completely appropriate.
>
> There is no indication in the chart of Mr. Myers that Dr. Loaiza was ever made aware of any claimed worsening of the patient's condition after the November 4, 2002, visit.
>
> The medical records of plaintiff indicate that he returned to see a physician in the Corcoran Prison facility on November 27, 2002, at which time he was seen by a Dr. Kim Nguyen for the recurrent decubitus ulcer problem, which is due to his paraplegia. Plaintiff was admitted to the CTC (Correctional Treatment Center). The records show that thereafter Mr. Myers was treated by other physicians or medical personnel and Dr. Loaiza within the CTC and he was referred for medical care outside of the prison setting.
>
> The medical records of Mr. Myers and the

**deposition testimony of Mr. Myers indicate that he has had a long history of decubitus ulcer problems and his decubitus ulcer problems continue to the present.**

**There is no indication from the medical records that plaintiff's condition on November 4, 2002 constituted an emergency or was sufficiently serious to necessitate admission on that day to the CTC. There was no excessive risk to Mr. Myers' health and safety.**

**There is no indication in the medical records that Dr. Loaiza ever refused treatment to the plaintiff and, in fact, Mr. Myers was prescribed medications and daily dressing changes for the decubitus ulcers, which was completely appropriate. Based upon the review of plaintiff's medical file, plaintiff received all reasonable and necessary care and treatment for the problems described in the Amended Complaint, that were apparent to Dr. Loaiza on November 4, 2002.**

**The care and treatment provided by Dr. Loaiza on November 4, 2002 was, at all times, consistent with the community standard of care.**

**In my practice as a Board Certified Family Practitioner, I have had occasion to treat patients with decubitus ulcer conditions, similar to those complained of by Mr. Myers. It is my opinion, to a reasonable medical probability, that even if Mr. Myers was admitted to the CTC on November 4, 2002, the outcome of his decubitus ulcer condition would be unchanged. It is not uncommon for decubitus ulcers to continue to be problems for an indefinite period of time. My experience with patients who have had every resource available to them, including surgeries, still have decubitus ulcers that do not heal. It is clear that Mr. Myers has a long-standing history of decubitus ulcers preceding his admission to the Corcoran medical facility and that he has had a significant amount of care within the prison setting and on the outside and still has allegedly unhealed decubitus ulcers. It is my opinion that Mr. Myers will always have trouble with decubitus ulcers.**

**Based upon my review of the medical records of Mr. Myers, including his medical history, it does**

> not appear to a reasonable medical probability that there would have been any additional treatment by Dr. Loaiza that would have prevented the aggravation of the presenting conditions and subsequent treatment beginning November 27, 2002 through the present.

Sockolov Decl., ¶¶ 4-11.

In order to meet his burden on summary judgment, Defendant must come forward with evidence that establishes the lack of existence of a triable issue of fact - evidence that he was not deliberately indifferent to a serious medical need of Plaintiff's, resulting in injury to Plaintiff. The Court finds that Defendant Dr. Loaiza has met his burden. The declaration of Dr. Loaiza and the declaration of Dr. Sockolov establish that Defendant provided Plaintiff with constitutionally adequate medical care. The evidence establishes that Dr. Loaiza prescribed medication and ordered dressing changes. It is undisputed that Dr. Loaiza did not admit Plaintiff to the CTC, but there is no evidence that such a decision constitutes deliberate indifference as that term is defined above. The evidence submitted by Defendant indicates that it was not medically necessary to admit Plaintiff to the CTC, and even if he had been admitted, his condition would have been unchanged. Essentially, the evidence submitted by Defendant demonstrates that Plaintiff suffers from a chronic condition, which Dr. Loaiza addressed with medication and dressing changes.

There is no evidence that Dr. Loaiza's decision to not admit Plaintiff to the CTC constitutes deliberate indifference. The crux of Plaintiff's complaint is the failure to admit him to the CTC. As noted, however, A prisoner's mere disagreement with diagnosis or treatment does not

11

support a claim of deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989). Further, there is no evidence that the decision caused Plaintiff injury.

In his opposition, Plaintiff contends that he has been unable to get copies of his medical records. Plaintiff denies generally Defendant's argument. Plaintiff has been afforded discovery in this matter, and his earlier request to continue this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f) has been denied. The issue in this matter is clear - whether Dr. Loaiza was deliberately indifferent to a serious medical need of Plaintiff's on November 4, 2002. The evidence clearly establishes that the level of care provided to Plaintiff on that date by Dr. Loaiza was reasonable and was not deliberately indifferent to a serious medical need of Plaintiff's. Dr. Loaiza is therefore entitled to summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be granted, and judgment be entered in favor of Defendant Dr. Loaiza and against Plaintiff, and this matter be remanded to the Magistrate Judge for pretrial proceedings as to Defendants Dulay and Moore.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>,

**951 F.2d 1153 (9th Cir. 1991).** IT IS SO ORDERED.

**Dated:   September 6, 2007**               /s/  **William M. Wunderlich**
                              UNITED STATES MAGISTRATE JUDGE