IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHANIEL MYERS,

      Plaintiff,                        CV F 04 5166 OWW WMW P

      vs.                             FINDINGS AND RECOMMENDATION
                                        RE MOTION FOR SUMMARY
                                        JUDGMENT (DOC 50)

DR. AUGUSTO LOAIZA, et al.,

      Defendants.

      Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant Dulay and Defendant Moore's motion for summary judgment. Plaintiff has opposed the motion.

      Plaintiff, an inmate in the custody of the California Department of Corrections at the California Substance Abuse Treatment Facility at Corcoran (SATF), brings this civil rights action against defendant correctional officials employed by the Department of Corrections at SATF. Plaintiff claims that defendants subjected him to constitutionally inadequate medical care. Plaintiff names the following individual defendants: Doctor Loaiza; Medical Technical Assistant

(MTA) Dulay; MTA Moore.[1]

Plaintiff's allegations stem from a medical transfer to Corcoran in October of 2002 from Salinas Valley State Prison. While at SVSP, Plaintiff was in the Correctional Treatment Center (CTC). Plaintiff had undergone surgery, and needed periodic dressing changes. Plaintiff alleges that he underwent surgery for decubitus. The Registered Nurse that saw Plaintiff upon his arrival refused to send him to the CTC. On the day of his arrival at SATF, Plaintiff was seen by MTA Dulay. Dulay refused to see Plaintiff, and told him to see MTA Moore, "as she does doctor's line."[2]

On November 4, 2002, Plaintiff had an appointment with Dr. Loaiza. Plaintiff alleges that Dr. Loaiza never saw his wound. Dr. Loaiza told plaintiff he would authorize egg crates for plaintiff to sleep on, but he failed to do so.

On November 13, 2002, Plaintiff asked MTA Dulay to change his dressing for him, as his hand was in a cast. MTA Dulay refused. On November 27, 2002, Plaintiff alleges that he "had no other choice but to go man-down" to get medical attention. Correctional staff summoned MTA Dulay and MTA Moore, both of whom refused to help Plaintiff get on the examination table (another inmate helped plaintiff on to the table). Both of them asked Plaintiff why Dr. Loaiza had not put Plaintiff in the hospital. They then contacted the on-call physician. Plaintiff alleges that he had three more surgeries, and contracted a contagious blood disorder due to their neglect.

SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine

---

[1] On September 27, 2007, summary judgment was entered in favor of Defendant Dr. Loaiza and against Plaintiff. Defendants Dulay and Moore are the remaining defendants, and separately move for summary judgment.

[2] Decubitus is a bedsore. A decubitus ulcer results from pressure to an area of the body from a bed or chair. Taber's Cyclopedic Medical Dictionary, 14th Ed.

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon its allegations, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

In order to meet their burden on summary judgment, Defendants Dulay and Moore must come forward with evidence that establishes the lack of a triable issue of fact - evidence that they were not deliberately indifferent to a serious medical need of Plaintiff's.  Defendants support their motion with the declaration s of Defendant Troy Dulay and Defendant Nelda Moore, along with the deposition of Plaintiff.

Plaintiff has a history of decubitus ulcers.  The first decubitus ulcer occurred shortly after Plaintiff became paralyzed and healed in approximately 8 to 12 months.  Pltf.'s Depo., 90:25-91:14.  The second decubitus ulcer lasted approximately two years.  Id. 91:15-21, 95:13-15.  The third decubitus ulcer, which is the subject of this lawsuit, arose while Plaintiff was housed at Salinas Valley State Prison prior to his arrival at CSP Corcoran on October 29, 2002.  Complaint, ¶ 4.  On page 88, line 6 of his deposition, Plaintiff indicates that the reason that his ulcers do not heal is his diabetes.

As to the conduct charged to Defendant Dulay in this case, Dulay declares the following.

> During my tenure at CSP Corcoran, I had the opportunity to provide care and treatment to plaintiff Nathaniel O'Shea Myers as an MTA.
>
> Mr. Myers alleges that, sometime between October 29, 2002 and November 27, 2002, I refused to change his dressing for a bedsore, refused to provide him with medical supplies for 4 days, and delayed his medical treatment for 30 days.  Mr. Myers is mistaken.

> I first met Mr. Myers on or about October 29, 2002, the day he first arrived at CSP Corcoran. That day, I supplied him with gauze and tape so he could bandage his wound if his bandages became loose. That same night, I changed the dressing on his buttock area. I called the emergency room nurse to determine whether there were any medical supplies ordered for plaintiff. I showed Mr. Myers the doctor's orders for medications, tests and supplies. I informed Mr. Myers that he would be on the medical line in the morning, as ordered by Dr. Deering. I told Mr. Myers that I do dressing changes at approximately 1900 hours when the evening yard opens.
>
> Plaintiff came to the medical clinic on many, but not all, evenings between October 29, 2002 and November 26, 2002, during which times I changed his dressing.
>
> I saw plaintiff on November 27, 2002, at approximately 1345 hours. Plaintiff was alert and oriented. He stated to me, "I'm in bad shape." I completed a CDC 7219 form and notified the emergency room nurse about Plaintiff's present condition. The emergency room nurse subsequently came for plaintiff and took him to the CTC ER emergency room for further medical evaluation.
>
> Plaintiff was not under my care or supervision from approximately 1345 hours on November 27, 2002, when he was taken by the emergency room nurse to CTC, to December 12, 2002.
>
> At all times I treated plaintiff with dignity and respect in an honest effort to provide him with medical care and treatment. At no time did I make any derogatory comments to or about plaintiff in front of prison staff or inmates. At no time did I refuse to examine plaintiff or provide him treatment. At no time did I ever knowkingly or intentionally cause Mr. Myers to experience any pain, suffering, injury or illness.

Declaration of Troy Dulay, ¶¶ 3-8.

The Court finds that Defendant Dulay has met his burden. The declaration of MTA Dulay and the deposition of Plaintiff establish that Defendant provided Plaintiff with constitutionally adequate medical care. The evidence establishes that although MTA Dulay did not immediately change Plaintiff's dressing, he provided him with materials to change his dressing, and did perform a dressing change that evening. MTA Dulay advised Plaintiff that he normally does dressing changes at 1900 hours. MTA Dulay called the emergency room nurse to determine whether there were any medical supplies ordered for Plaintiff. MTA Dulay informed

7

Plaintiff that he would be on the medical line in the morning, as ordered by Dr. Deering.  Further, the evidence establishes that Plaintiff came to the medical clinic on many, but not all, evenings between October 29, 2002 and November 26, 2002, during which times MTA Dulay changed his dressing.  The evidence submitted by Defendant Dulay indicates that he provided Plaintiff with adequate medical care.  That MTA Dulay did not immediately change Plaintiff's dressing, opting to provide Plaintiff with clean dressing material instead, does not subject MTA to liability.  The evidence offered by MTA Dulay indicates that he did not engage in any conduct that was deliberately indifferent to a serious medical need of Plaintiff's, causing injury to Plaintiff.

In opposition, Plaintiff offers no evidence that Dulay knew of and acted with deliberate indifference to a serious medical need of Plaintiff's, causing injury to Plaintiff.  The evidence clearly establishes that the level of care provided to Plaintiff during that time frame by MTA Dulay was reasonable and was not deliberately indifferent to a serious medical need of Plaintiff's.  MTA Dulay is therefore entitled to summary judgment.

As to Defendant MTA Moore, she declares the following.

> During my tenure at CSP Corcoran, I had the opportunity to provide care and treatment to plaintiff Nathaniel O'Shea Myers as and MTA.
>
> Mr. Myers alleges that, sometime between October 29, 2002 and November 27, 2002, I refused to change is dressing for a bedsore, refused to provide him with medical supplies for 4 days, and delayed his medical treatment for 30 days.  Mr. Myers is mistaken. At no time did I ever refuse to change plaintiff's dressing, refuse to provide him with medical supplies or delay his medical treatment.
>
> At all times I treated plaintiff with dignity and respect in an honest effort to provide him with medical care and treatment.  At no time did I make any derogatory comments to or about plaintiff in front of prison staff of inmates.  At no time did I refuse to examine plaintiff or provide him treatment.  At no time did I ever knowingly or intentionally cause Mr. Myers to experience any pain, suffering, injury or illness.

Declaration of Nelda Moore, ¶¶ 3-5.

As with Defendant Dulay, Defendant Moore has met her burden on summary judgment.

1   The evidence submitted by Defendant Moore indicates that there is a lack of evidence of a triable
2   issue of fact - evidence that Moore knew of and disregarded a serious risk to Plaintiff's medical
3   condition.  The only factual allegation as to Moore is that she refused to change Plaintiff's
4   dressing.  Moore declares, under penalty of perjury, that this is not the case.  In his opposition,
5   Plaintiff offers no evidence that this is the case.
6        In his opposition, Plaintiff contends that he has been unable to get copies of his medical
7   records.  Plaintiff denies generally Defendant's argument.  Plaintiff has been afforded discovery
8   in this matter, and his earlier request to continue this motion for summary judgment pursuant to
9   Federal Rule of Civil Procedure 56(f) has been denied.  The issue in this matter is clear - whether
10  MTA Dulay and MtA Moore were deliberately indifferent to a serious medical need of Plaintiff's
11  in October and November of 2002.   The evidence clearly establishes that the level of care
12  provided to Plaintiff by Defendants Dulay and Moore  was reasonable and was not deliberately
13  indifferent to a serious medical need of Plaintiff's.  Defendants are therefore entitled to summary
14  judgment.
15       Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary
16  judgment be granted, and judgment be entered in favor of Defendants Dulay and Moore and
17  against Plaintiff.
18       These findings and recommendations are submitted to the United States District Judge
19  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B).  Within
20  twenty days after being served with these findings and recommendations, any party may file
21  written objections with the court and serve a copy on all parties.  Such a document should be
22  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the
23  objections shall be served and filed within ten days after service of the objections.  The parties
24  are advised that failure to file objections within the specified time waives all objections to the
25  judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
26

objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO ORDERED.**

**Dated:    December 21, 2007**              /s/  **William M. Wunderlich**
                                        UNITED STATES MAGISTRATE JUDGE